L. FREEMAN *v.* DEMING and others.

J. C. FREEMAN *v.* DEMING and others.

IN a suit for an account of a joint adventure, the offers to account made by a defendant before the suit, do not prevent the usual decretal order that the accounts be taken.

The giving of negotiable promissory notes for the price, is not of itself such a payment, as will constitute one a *bona fide* purchaser in equity.

But if such notes have been negotiated, and when due are apparently, and so far as the makers have reason to believe, really, in the hands of a holder in good faith, for value, in the usual course of trade; the makers are warranted in paying the same, although they then have been informed of the equity of the party claiming the thing sold to them; and they may rely upon the giving of the notes and such payment, as constituting them *bona fide* purchasers.

An assignment for the benefit of creditors, giving preferences, made in June, 1842, by one hopelessly insolvent, against whom there were judgments and executions, and who in five months, became an applicant for the benefit of the Bankrupt Act of 1841; *held*, to have been made *in contemplation of bankruptcy*, within the meaning of that act, and therefore void.

Where, on a bill filed by the assignee under such a void assignment, the general assignee in bankruptcy being a defendant, claimed and was held entitled to the fund, and the other defendants had not raised any objection to the voluntary assignee's title; the suit was allowed to proceed for the benefit of the assignee in bankruptcy; he being put to his election to adopt the suit, or abandon his claim.

December 8, 9, 1845; March 10, 1846.

THE original bill was filed, December 18th, 1841, by Lorrain Freeman, against Martin Deming, Horace Meech, W. Mayo, and Alfred Van Santvoord. The complainant assigned the subject matter of the suit to James C. Freeman, on the 28th of June, 1842, and soon after was declared a bankrupt under the act of Congress; whereupon in June, 1844, J. C. Freeman filed a supplemental bill to continue the suit, in which Isaac Newton, and W. C. H. Waddell, the general assignee in bankruptcy, were added as defendants. All the defendants except Mayo answered, and the suits were heard on pleadings and proofs. So far as the facts are material in respect of the points now reported, they were as follows:

In February, 1841, Deming purchased of W. Whilden, the steamboat Telegraph for $27,000, of which $10,000 was paid, and for the security of the residue W. retained the title to two-thirds of the vessel. The purchase was one-half for Meech, one fourth for Deming, one-eighth for W. Mayo, and one-eighth for Miller & Davenport. The latter in June, 1841, sold and assigned their interest to L. Freeman. The boat was run by Deming, as master, for account of the owners, and stores, &c. were furnished by Miller & Davenport, and by L. Freeman.

On the 25th of October, 1841, Deming assuming to be the owner of all but Whilden's interest, joined W.'s agent in a sale of the steamboat to A. Van Santvoord, (with whom Newton was interested,) for $25,000; who after deducting the sum due to Whilden, gave his notes, indorsed by Newton, for the balance $8000, to Deming. Of these notes, $4000 were delivered by Deming to various persons, to whom he alleged the steamboat was indebted; one note of $1500 at twelve months, was transferred to Meech, and the residue, viz.: one of $1500, at fifteen months, and two of $500 each, one at twelve and the other at fifteen months, were in Deming's possession when he answered the original bill.

L. Freeman claimed that he was entitled to one-eighth of the $8000 received on this sale, and to an account from Deming and Meech, of the earnings of the boat while owned by the parties. He alleged that the sale was made without his assent or sanction, and claimed a lien on the vessel for the amount due to him.

It appeared that Deming was insolvent, and on filing the bill, L. Freeman obtained an injunction, restraining him from transferring or disposing of one-eighth of the notes received on the sale.

Van Santvoord and Newton were ignorant of any right or claim, other than Deming's and Whilden's, when they bought the steamboat and gave their notes. Newton paid the notes at maturity. He knew L. Freeman's suit was pending, but not its nature or objects. He paid the three notes above stated as in Deming's hands, at the American Exchange Bank, where they had been lodged for collection by the Albany Exchange Bank as owners, and he averred they were owners of the notes.

In fact, the note of $1500 received by Meech, was discounted by the Chemical Bank before its maturity, and was collected by that bank. The $1500 note, and one of those for $500, retained by Deming, were discounted before they were due, by *bona fide* purchasers, and were collected in their behalf. The other note of $500, at twelve months, was indorsed by Deming to a mercantile house in Albany, who indorsed it, and left it with the Albany Exchange Bank for collection, and by that bank it was indorsed and sent to the American Exchange Bank, where it was paid by Newton when it fell due. Deming attempted to prove that before the suit was commenced, he offered to come to a full accounting with L. Freeman and his solicitor.

The general assignee in bankruptcy, in his answer to the supplemental bill, alleged that the assignment of L. Freeman to James C. Freeman, was made in contemplation of bankruptcy, was a fraud upon the bankrupt act, and void; and insisted that he as general assignee, was entitled to the fund claimed by the original bill.

*A. H. Dana*, for the complainant.

*A. P. Man*, for Deming and Meech.

*C. Van Santvoord*, for Newton and Van Santvoord.

*B. W. Bonney*, for Waddell, the General Assignee.

THE ASSISTANT VICE-CHANCELLOR.—As against the defendants, Deming and Meech, the suit establishes a joint purchase of a steamboat, and the running the same on the joint account of those parties together with Lorrain Freeman as successor of Miller & Davenport, and with William Mayo. The parties have contributed unequally towards the joint charges, and Freeman has received no part of the proceeds of the sale of the vessel. His assignee, J. C. Freeman, is entitled to an account as a matter of course. Whether the attempts of Deming to render an account, as insisted by him, were such as to put Freeman in the

wrong in filing his bill, cannot be determined until the state of the accounts is ascertained.

In the mean time, Deming, who does not deny his insolvency, should transfer and pay over to a receiver, all the proceeds of the boat which he had remaining in his hands when the bill was filed, with the exception of such as he has paid in good faith to creditors having demands against the boat.

The defendants Newton and Van Santvoord, bought the steamboat of Deming, without any notice of the complainant's rights, and paid the entire consideration in their negotiable promissory notes.

The original bill alleges, that the sale was made without L. Freeman's knowledge or consent; but the course of the complainant's proceeding has been to affirm the sale. He claims to have notified Newton and Van Santvoord of his rights, in time to prevent them from paying the entire amount of their notes, and in the original suit, Van Santvoord was enjoined from paying to Deming the complainant's eighth part of the notes. Newton was not affected by the injunction.

It is no doubt true, that the giving of the notes, would not be deemed a payment before notice of the equity of the complainant while Deming retained them; and if after such notice, Van Santvoord had paid them to Deming, he could not protect himself from responding to the complainant, on its appearing that he was entitled to receive a part of such notes. And the complainant insists, that as to the note of $500, payable at twelve months, these defendants paid it in their own wrong, and are liable to account for it to him.

There are two answers to this claim. First, the complainant did not assert that he was entitled in any aspect of the case, to more than $1000, or one-eighth of the purchase money received by Deming. And when these defendants paid the note in question, there was still outstanding $2000 of the notes given on the purchase. It does not appear that they knew, or that they could have known, but that the complainant's one-eighth was in the sum last mentioned; nor but that he had intercepted or laid hold of those notes in order to protect his interests. The note of $500 was not in Deming's hands, and there is no ground for saying

that Newton or Van Santvoord when they paid it, had any reason to suppose they were infringing upon the complainant's rights.

The other answer to the claim is, that these defendants had a right to suppose from the manner in which the note was presented to them, that it was in the hands of third persons in good faith, who could collect it of them if it were not paid. It came through a bank in Albany, to a bank here for collection, and was indorsed with the name of a mercantile house at Albany, as if it had passed through their hands in the usual course of trade. Under such circumstances, I do not think that they were bound to suffer the note to be protested and their credit thereby injured, because of their situation in reference to the complainant. They had bought the property of Deming, who had been entrusted with the title, and if he proved faithless to his principals, it was not the fault of the purchasers. On discovering the sale, the complainant ought to have resorted to efficient means to prevent Deming's parting with any of the notes; and could not expect to have the purchasers embroil themselves with the holders of their negotiable paper, to whom Deming had passed the same away. In this instance, L. & W. Merchant became the holders of the note of $500, for a valuable consideration, soon after it was given. Whether the consideration was such as constituted them *bona fide* purchasers of the note, I need not determine; because I think that under the circumstances of this case, Van Santvoord and Newton were warranted in paying it to the persons holding it, on the assumption that they were such purchasers.

The fact that there were still $2000, of the notes outstanding, was a sufficient reason to excuse V. S. and Newton, from calling on the complainant to look into the title of the holders of the note of $500; if any excuse were necessary.

The bill must be dismissed as to Van Santvoord and Newton, and I do not see any ground on which the complainant can be exonerated from costs.

The remaining question to be disposed of at this time, grows out of the claim of the assignee in bankruptcy.

It appears that Lorrain Freeman, when he assigned this de-

mand to James C. Freeman, on the 28th of June, 1842, was insolvent and unable to pay his debts ; and judgments were then outstanding against him, on which executions had been issued. He became a voluntary applicant for the benefit of the bankrupt law, on the 23d of November following, and was declared a bankrupt in due course. The assignment itself recites his indebtedness to the creditors, set forth in a schedule annexed, and that by reason of his embarrassments in business, he is at present unable to pay the same ; and that he is desirous to the best of his ability, to make some provision towards the eventual satisfaction of those debts, as far as lies in his power ; it then transfers this and another claim, in trust to pay certain preferred debts, and to divide the residue among other creditors, all of whom are specified in the schedule.

These facts show that L. Freeman was conscious of being in a state of hopeless insolvency. The assignment was an act entirely out of the usual course of business, not made with any view or expectation of aiding him in continuing his business, but it was made for the avowed purpose of preferring some of his creditors, to the extent of his limited ability, while he had the power.

It was not intended or accepted as payment of the debts preferred, and no evidence of his having other means for the discharge of his liabilities has been introduced, to rebut the strong inference arising from the assignment itself.

It has been decided by Judge Story, and I think justly, that the words " in contemplation of bankruptcy," in the first clause of the second section of the late bankrupt act, mean in contemplation of a *state* of bankruptcy, or rather of actually stopping one's business, because of insolvency and incapacity to carry it on. (*Hutchins* v. *Taylor*, 5 Law Reporter, 289 ; *Arnold* v. *Maynard*, 2 Story's R. 349.) The same rule is recognized in *Jones* v. *Sleeper*, (2 N. Y. Legal Observer, 131) by Judge Ware, in the U. S. District Court in Maine.

It follows that the assignment of this demand to J. C. Free man, must be deemed void, and a fraud on the bankrupt act, and the general assignee is entitled to claim and receive the same as

a part of L. Freeman's assets, which passed to him by force of the order, declaring him to be a bankrupt.

This being the result, the other defendants insist that the bill must be dismissed, because J. C. Freeman's title fails. The defendants Newton and Van Santvoord, have no occasion to urge this point in their behalf; and the other defendants have not set it up in their answers. The only party who has a right to allege the invalidity of the assignment, acquiesces in the complainant's prosecution of this suit, claiming to receive its fruits under the provision of the bankrupt act. I think he is at liberty to take this ground, and it does not affect the rights of Deming and Meech.

In regard to the complainant, it is proper that the general assignee should take his position at this time, and either adopt the suit as it stands and conduct it in future, or abandon his claim. The decree will be made to conform to his election. In other respects, it will be a decree against Deming for a receiver, and against Deming and Meech, for an account of their respective parts, in the affairs of the steamboat; and dismissing the bill as to Van Santvoord and Newton, with costs. All further questions and directions will be reserved.